IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Cody Wilson,
for Deborah S. Dady, Deceased,                    :
                Plaintiff        :        Civil Action 2:13-cv-00496

        v.                               :        Judge Frost

Carolyn W. Colvin,                                :        Magistrate Judge Abel
Commissioner of Social Security,
             Defendant          :

**REPORT AND RECOMMENDATION**

Plaintiff Deborah S. Dady brought this action under 42 U.S.C. §§405(g)  for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance and Supplemental Security Income benefits. This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>** Plaintiff Dady alleged she became disabled at age 36 by cervical degenerative disc disease; generalized osteoarthritis; fibromyalgia; history of syncope; morbid obesity an depressive disorder. The administrative law judge concluded that plaintiff Dady retained the residual functional capacity to perform a reduced range of light work. She was limited to unskilled, simple, repetitive tasks with no high production quotas. She could only have superficial interaction with coworkers and the public.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to provide substantial evidence supporting his evaluation of plaintiff's mental impairments; and,

- The administrative law judge failed to appropriately weigh the opinion of the examining physician when determining plaintiff's physical residual functional capacity.

**Procedural History.**  Plaintiff Deborah S. Dady filed her application for disability insurance benefits on July 17, 2009, alleging that she became disabled on July 1, 2008, at age 39, by seizures, colon cancer, weakness and confusion.  (R. 145-46, 165.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On April 24, 2012, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 30.)  A vocational expert also testified.  On May 23, 2012, the administrative law judge issued a decision finding that Dady was not disabled within the meaning of the Act.  (R. 23.)  On April 17, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Deborah S. Dady was born January 8, 1969.  (R. 145.) She has a high school education.  (R. 171.)  She has worked as a bartender and a waitress.  She last worked November 5, 2006.  (R. 165.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Dady's testimony as follows:

The claimant testified that she stopped working when she was pregnant. She tried to go back to her former place after the birth of her child, but she testified that her hours were cut and the checks bounced. She ultimately stopped and stayed home to care for her daughter. When her family encountered financial difficulty, she tried to resume work, but could not get a job. She admitted that at the time, it was just circumstance that kept her from getting a job.

She testified that she started having health issues in 2008. The claimant testified that her first health problem was depression and that she was having suicidal ideation. She said she things about it "all the time."

She stated that she cannot sit or stand very long due to the pain in her neck and back. She described pain in her low back, across her shoulders and in her neck. She said she has experienced the pain for years, but it has been worse in the last few years. The claimant testified that her medications do not always work and that her primary care provider encouraged her to apply for disability. As for medications, she initially stated that she had no side effects, then noted that they make her tired and two of them cause weight gain. At the time of the hearing, the claimant was attending physical therapy, which she found helpful.

She also described getting "real confused about stuff," noting that she loses track of things, and "cannot keep it all together." She described starting to have seizures, which she believed was a result of medication she was taking. She does not like to be around too many people and no longer attends family functions due to getting anxious and more confused. She also described feeling worthless "all the time." She has been prescribed psychotropic medications and was going to counseling, but is not currently going to counseling as she cannot afford it. She states to having poor memory. She said that she used to like to read, but now is unable to concentrate on a book long enough to read it. She also has difficulty following television shows. This, she said, has been for about the last four years. She then also said, she felt this way when she was working, but thought it was just from working too much and not sleeping enough.

3

She estimated that she can only stand for five minutes at a time, walk for five minutes at a time and sit for about ten minutes at a time. She can pick up a bag of groceries. During a typical day, she plays with her daughter. She is "not allowed" to go outside alone with her daughter, because she has passed out before. She leaves home to go to physical therapy and to doctor appointments. She watches television and watches her child. She said that she used to enjoy going camping, but they sold their camper in 2009. She has a computer and a Facebook page, but said her daughter updated it once a month for her. Later, she testified that her boyfriend bought her a laptop computer and checked her e-mails at least weekly. She used to go to bingo "all the time," but she last went in 2010. She is hoping that she can garden this summer. She likes to plant flowers and vegetables. She says she has difficulty sleeping and only gets three to four hours a night, as she is up off and on during the night and roaming the house. She says that her boyfriend goes into the shower with her because she cannot stand up too long. She has her hair done once a week because she cannot hold her arms up long enough to do her hair. She "tries" to do some cooking and tries to pick up her after her young child. Her 13 year old daughter is in school and the claimant is able to attend school functions. She testified that her 21 year old son does not work outside the home and stays home to look after her. She and her boyfriend try to go out to dinner every weekend and once a month she goes grocery shop-ping with her boyfriend. She has no pets, but loves to take pictures and clip pictures, like scrapbooking. She said that she has not taken pictures outside since last summer. She has only taken ones at her daughter's birthday party. She said that her boyfriends' mother visits her for three to four hours every day.

(R. 17-18.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Eric L. Newsome, M.D. On an unknown date, Dr. Newsome completed a basic medical form for the Ohio Department of Job and Family Services. He noted that plaintiff was diagnosed with a seizures, syncopal episode, colon cancer and polyps, and depression. He opined that plaintiff could stand and/or walk for 2 hours in an 8-hour workday. She could lift and/or carry up to five pounds frequently and ten pounds occasionally. Plaintiff was extremely limited with respect to bending. Plaintiff had marked limitations with pushing and pulling. She was moderately limited in her abilities to reach, handle, and make repetitive foot movements. These limitations were the result of plaintiff's seizure and syncope risk. (R. 476-477.)

C. Leigh, M.D.  On October 23, 2009, Dr. Leigh, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Leigh concluded that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She could stand and/or walk for a total of about 6 hours in an 8-hour day. She could sit for a total of about 6 hours in an 8-hour workday. Dady was unlimited in her abilities to push and/or pull.

Dr. Leigh opined that plaintiff could occasionally climb ramps or stairs. She could never climb ladders, ropes or scaffolds. Dady could occasionally balance, stoop, kneel, crouch or crawl. She should avoid all exposure to hazards.

Dr. Leigh concluded that plaintiff's allegations were only partially credible. (R. 402-09.)

On May 4, 2010, William Bolz, M.D., reviewed the evidence of record and affirm-ed the residual functional capacity formulated by Dr. Leigh. He indicated that the new evidence did not substantially change the functional limitations found by Dr. Leigh. Although claimant reported that she had an increase in seizures, Dr. Bolz stated that the medical evidence of record did not document any additional seizures. Plaintif was not taking seizure medication and had not been to the emergency department. Her primary care physician had not diagnosed her with a seizure disorder. As a result, Dr. Bolz concluded that plaintiff was only partially credible. (R. 484.)

**Psychological Impairments.**

<u>Muskingum Valley Health Center</u>. On November 21, 2008, Kristin Davis, P.A., a physician's assistant with the Muskingum Valley Health Center, examined plaintiff. Plaintiff complained of a syncopal episodes. Her family members reported that she had slurred speech and intermittent changes in her mental status. Plaintiff complained of headaches and memory loss. She reported depression and crying spells. (R. 314-15.) On July 15, 2009, it was noted that plaintiff experienced depression and crying spells. (R. 342.) On January 18, 2010, plaintiff presented for evaluation of mood disturbance . Plaintiff reported agitation followed by severe depression. She had constant anxiety. She reported past and current suicidal ideation. Plaintiff reported difficulty with her memory. Her appetite was poor. She had occasional bursts of energy. She cried a lot. She experienced mood swings every day. Mr. Ickes diagnosed major recurrent depress-ion and post-traumatic stress disorder. He assigned a GAF score of 50. (R. 424-27.)

6

On February 22, 2010, plaintiff reported that Zoloft was only partially effective. She was having crying spells. Her thinking was clearer, but her sleep was disturbed. Plaintiff had some suicidal ideation but no lethality. (R. 428.) On March 12, 2010, plaintiff reported experiencing stress in social situations. (R. 429.)

On June 10, 2010, plaintiff reported that she was easily provoked. She was depressed and felt sad and helpless. She was unable to do the things she used to do. She had gained 50-80 pounds and only slept about four hours a night. (R. 493.) In August 2010, plaintiff reported that her depression was a little worse. She left her house "maybe once a week." (R. 494.) She reported suicidal ideation but denied lethality or intent. She reported seeing people or things that were not there. *Id.*

In October 2010, plaintiff's medications were changed. The Abilify and Lexapro had been ineffective. She began taking Zyprexa and Wellbutrin. (R. 496.) In November 2010, plaintiff reported that the changes in her medication had helped. *Id.*

<u>Lee Roach, Ph.D.</u> On August 19, 2009, Dr. Roach, a psychologist, completed a disability assessment report at the request of the Bureau of Disability Determination. Plaintiff reported that she was having seizures, confusion and headaches. Dady reported graduating from high school and attending regular classes. Although she used to read, she no longer could read as well as she did in the past.

Dady lived with her boyfriend. She had three children ages 18, 11 and 2. She last worked in November 2006. She had worked as a bartender. She left that position because she had to go on bed rest while she was pregnant.

7

Dady reported that she started having seizures in July 2008. She reported confusion and forgetfulness. She had headaches everyday. Dady reported that she was depressed because she could no longer do what she used to do and did not think as well as she used to. She reported that she frequently cried. Dady was prescribed Celexa for depression, but she was not seeing a psychiatrist or a counselor.

On mental status examination, plaintiff was cooperative with fleeting eye contact. She was nervous about the interview. She reported depression beginning October 2008. She denied suicidal ideation. She worried about her health and her financial situation. Plaintiff was able to recall 6 digits forward and 3 digits backwards. Her immediate recall was functional, although she reported having short term memory problems. Her long term memory was functional. Her intellectual functioning was within the borderline range.

On a typical day, Dady woke up early to get her children off to school and to care for her baby. She could not be left alone, and her family helped with housework and grooming. She used to be outgoing, but now she preferred to be alone. She was aggravated easily. She did not cook because it was not safe for her to do so. She had difficulty sleeping. She slept 2-5 hours at night and then 1-3 hours later in the day, but she still felt exhausted. She required reminders from her husband to take a shower. Her appetite varied. At times, she had no energy or desire to eat, and other times she wanted to eat all the time. She reported having low energy. Her ability to sustain activities varied with level of interest and physical endurance.

8

Dr. Roach diagnosed dysthymic disorder, adjustment disorder with anxiety, and pain disorder associated with both psychological facts and a general chronic medical condition. He also diagnosed borderline intellectual functioning and assigned a Global Assessment of Functioning ("GAF") score of 55. Dr. Roach noted that Dady's most serious mental symptom was her anxiety and depression. She experienced difficulties in social and occupational functioning 4-5 days per week. She had some stable days, but more days were unstable indicating that her functioning is limited.

Dr. Roach opined that plaintiff's ability to understand and execute simple instructions  was moderately impaired based on her anxiety and depression. She was capable of completing simple, routine activities of daily living at home. She had some comprehension problems in responding to the questions during the clinical interview. She was assessed as being cognitively capable to understand, remember and follow instructions, but at times her functioning was compromised by her short term memory problems. Dady's ability to maintain attention, concentration, persistence and pace while performing simple, repetitive tasks was moderately impaired. Plaintiff's ability to relate to others, including fellow workers and supervisors, was moderately impaired. Her ability to withstand stress and pressures associated with day-to-day work activity was markedly impaired. (R. 374-81.)

Douglas Pawlarczyk, Ph.D. On September 11, 2009, Dr. Pawlarczyk, a state agency reviewing psychologist, completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique. (R. 384-401.)With respect to under-

standing and memory, Dr. Pawlarzayk opined that plaintiff was moderately limited with ability understand and remember detailed instructions. She was not significantly limited in her abilities to remember locations and work-like procedures and to remember and understand very short and simple instructions. With respect to sustained concentration and persistence, plaintiff was moderately limited in her abilities to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff was moderately limited in her abilities to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. With respect to adaptation, plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting.

Dr. Pawlarczyk noted that mental status evaluations documented trouble sleeping and crying spells. Plaintiff's insight and judgment were normal. She had good interaction, with normal affect, good eye contact, and pleasant mood. She appeared tired. Plaintiff was able to care for three children, perform some household chores, cook simple meals and relate adequately to others. Plaintiff did not appear to have significant memory deficits, and her concentration appeared adequate. She had difficulty with sus-

tained attention and concentration. She might be restricted to simple instructions and tasks. She was capable of superficial relationships. She maintained the ability to perform simple repetitive tasks. Dr. Pawlarczyk was partially credible, but her allegations concerning the severity of her symptoms were not credible. Dr. Pawlarczyk gave some weight to Dr. Roach's report, but the Dr. Roach's marked limitations with respect to handling the stress and pressure of work were not supported by other medical evidence. Plaintiff's symptoms suggested only a moderate impairment in this area.  (R. 384-86.)

Dr. Pawlarczyk indicated that plaintiff met the diagnostic criteria for dysthymic disorder, borderline intellectual functioning, an adjustment disorder with anxiety, and a pain disorder. (R. 391-94.) Dr. Pawlarczyk concluded that plaintiff had moderate restriction of daily activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. 398.)

On April 22, 2010, Karla Voyten, Ph.D., reviewed the evidence of record and affirmed Dr. Pawalrzyk's assessment. Dr. Voyten concluded that the treatment notes from January through March 2010 indicated that plaintiff had show improvement and that her allegations of worsening symptoms wer not supported by the record. (R. 481.)

## Administrative Law Judge's Findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease; generalized osteoarthritis; fibromyalgia; history of syncope; morbid obesity an depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but is precluded from climbing ladders, ropes and scaffolds. She should avoid work at unprotected heights or around hazardous machinery. She is limited to unskilled simple repetitive tasks with no high production quota tasks and only superficial interaction with coworkers and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 8, 1969 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

12

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 14-22.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

13

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to provide substantial evidence supporting his evaluation of plaintiff's mental impairments. The administrative law judge gave greater weight to the non-examining reviewer's opinion over the consultative examiner's opinion and failed to consider all the limitations of her severe and non-severe mental health impairments when formulating her residual functional capacity. Plaintiff maintains that the administrative law judge focused on irrelevant symptoms and signs. The administrative law judge also failed to recognize the importance of certain symptoms and signs of her mental impairments documented in the record, including suicidal ideations with lethal intent, auditory hallucinations, decreased appetite and energy, flat or blunted affect, anxiety, irritability, and feelings of helplessness. The administrative law judge never mentioned that these symptoms were repeatedly noted in the record. Rather, the administrative law judge downplayed these symptoms and focused on her appropriate behavior, interaction and insight to counteract the relevance of other symptoms documented in the record. Moreover, plaintiff's interaction, behavior, and insight are not relevant diagnostic

criteria under Listing 12.04(A)(1), but depressed mood, appetite disturb-
ance with weight change, sleep disturbance, decreased energy, feelings of
worthlessness, difficulty concentrating, suicidal ideation, and hallucina-
tions are all relevant criteria. The administrative law judge erred when he
stated that the record did not document any treatment notes from a coun-
selor. The record contains a year of treatment notes from plaintiff's coun-
selor, Timothy Ickes, PA-C. From August 2010 through April 2011, Mr.
Ickes' treatment notes indicate that plaintiff's depression was worsening.
The administrative law judge's summary of the treatment notes are mis-
leading. Although the notes stated that Zoloft had helped reduce plain-
tiff's crying spells, this reduction was temporary, and the crying spells
returned within the month. Plaintiff also reported that although Abilify
helped her stay calm, its effects only lasted a limited time. Dady continued
to have anger and irritability issues on a persistent basis. The administrat-
ive law judge also erred when he gave greater weight to the opinion of the
non-examining reviewer over the consultative examiner's opinion. Dr.
Roach's report was supported by symptoms and signs observed in his
examinations rather than simply plaintiff's subjective complaints. Dr.
Roach's opinion was also consistent with the relevant evidence of record.
Plaintiff further argues that the administrative law judge failed to explain
the weight given to Dr. Roach or explain why Pawlarczyk's opinion was

15

adopted despite his inconsistent and unsupported conclusions. Plaintiff maintains that Dr. Voyten's conclusion that Dady had shown improvement was not supported by the record. Plaintiff argues that the administrative law judge failed to consider the limitations posed by her borderline intellectual function and to incorporate all of the limitations posed by her severe and non-severe impairments.

- <u>The administrative law judge failed to appropriately weigh the opinion of the examining physician when determining plaintiff's physical residual functional capacity</u>. Plaintiff argues that the administrative law judge failed to explain how the non-examining doctors' opinions were better supported than Dr. Newsome's opinion. The administrative law judge failed to provide support for his conclusion that Dr. Newsome's opinion was based primarily on plaintiff's subjective complaints. His examination notes documented obesity and limited range of motion in the joints and spine.

**<u>Analysis.</u>**  Only treating physicians are entitled to controlling weight. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). State agency reviewing medical sources are highly skilled medical professionals who are experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i). With respect to plaintiff's mental impairment, the administrative law judge stated:

16

In regards to the claimant's depressive disorder, the claimant stated that she was having suicidal ideation, but that her children keep her "grounded." The claimant complained of being depressed and having mood disturbances and crying spells; however, she generally presented with appropriate behavior and good interaction, insight and judgment (see generally Exhibits 3F; 10F and 16F). She was prescribed psychotropic medications and testified to having gone to counseling; however, the record does not document any treatment notes from a counselor. Notes from the claimant's primary care provider, Kristen Davis, PA-C notes that the claimant continues to complain of symptoms, but the medications have helped her stay calmer longer and more relaxed (Exhibit 10F, p. 6). In October 2010, the claimant's medications were discontinued and new ones prescribed due to a decline in efficacy (Exhibit 16F, p. 12). The claimant was doing better (see Exhibit, pp. 12 and 14).

(R. 19.) The administrative law judge reviewed the opinion evidence:

As for the opinion evidence, the mental limitations set forth in the residual functional capacity generally accept and adopt the opinion of the Bureau of Disability Determination medical experts expressed in the Mental Residual Functional Capacity set forth in Exhibit 6F (*reaffirmed at Exhibit 15F*). Although neither examining nor treating physicians, these experts are Board Certified medical doctors with knowledge of the Social Security Administration's program and requirements. Their opinion is derived from and consistent with the medical evidence of record. Therefore, I give the Bureau of Disability Determination opinion great weight.

. . .

I have considered the opinion of Lee Howard, Ph.D., (sic) a licensed psychologist who examined the claimant at the request of the Bureau of Disability Determination. His opinion, set forth in Exhibit 5F, is the result of his own observations, psychometric testing, a clinical interview, and a mental status evaluation. His opinion is not supported by the totality of the evidence. Moreover, the doctor apparently relied quite heavily on the subject report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints. I give Dr. Roach's opinion only some weight.

17

(R. 20.) Here, the opinion of the administrative law judge is supported by substantial evidence. As noted above, state agency reviewing psychologists are experts in Social Security disability evaluation. Dr. Roach was not a treating source. Although the administrative law judge mistakenly believed that the notes of Mr. Ickes were those of Ms. Davis, he considered the content of those treatment notes. Although the administrative law judge did not identify plaintiff's borderline intellectual functioning as an impairment, plaintiff has not pointed to any limitations resulting from this impairment that would establish greater functional limitations.

With respect to the opinion of Dr. Newsome, the administrative law judge stated:

> I have considered the opinion of Eric Newsome, M.D. (Exhibit 13F, pp. 1-2). It is unclear when Dr. Newsome provided this opinion for the Muskingum County Department of Job and Family Services. Further, it is unclear whether Dr. Newsome is a treating or merely an examining source. He notes that the limitations provided are a result of seizure and syncope risk. The limitations provided are not supported by the evidence of record, especially in light of no evaluation of the alleged seizure activity and the claimant's testimony that the syncopal episodes resolved after a medication change. Further, the limitations appear to be based primarily on the claimant's subjective complaints. I give this opinion little weight.

(R. 20.) Here, the administrative law judge's decision was supported by substantial evidence. The date of Dr. Newsome's opinion is not clear. The evidence of record indicated that plaintiff's seizure activity and syncopal episodes resolved after her medication was changed, and the primary basis for the limitations identified by Dr. Newsome were her allegations concerning her seizure activity and syncopal episodes.

18

The residual functional capacity formulated by the administrative law judge was supported by the Dr. Leigh, the state agency reviewing physician.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel
United States Magistrate Judge

19